BENJAMIN BANKS *vs.* HAMMOND BRAMAN.

Suffolk. December 13, 1906. — April 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Evidence,* Of probable duration of life. *Damages.*

In an action, by a man seventy-nine or eighty years of age when injured, for personal injuries from being knocked down and rendered unconscious by an automobile driven by the defendant, where the plaintiff has introduced evidence tending to show permanent injuries physical and mental resulting from the accident, the defendant on the question of damages may show the probable duration of the plaintiff's life had the accident not occurred, and for this purpose standard mortality or life expectancy tables are admissible.

In an action, by a man seventy-nine or eighty years of age when injured, for personal injuries from being knocked down and rendered unconscious by an automobile driven by the defendant, where the plaintiff had introduced evidence tending to show permanent injuries physical and mental resulting from the accident, and the defendant on the question of damages desired to show the probable duration of the plaintiff's life if unaffected by the accident, a medical witness for the defendant had before him a "book on life insurance" and turned to a "table showing the expectancy of life" for each age from fifteen years to eighty-five years "according to the actuaries' combined experience." He testified that such tables were compiled "by the actuaries of these companies" indicating the expectancy of life at each particular age, but on further inquiry

it appeared that he had no information in regard to the authenticity of the table other than that contained in the book and that he was stating merely what the table purported to be. It did not appear that the table offered in evidence was a standard table or that it was a well established or recognized authority, or even that it was in general use by life insurance companies. The presiding judge excluded the table. *Held,* that the judge well might have concluded upon the evidence before him that the table was not authenticated sufficiently, that this court could not say that such a conclusion was not warranted, and if warranted the exclusion was right.

TORT for injuries from being struck by an automobile driven by the defendant on Mount Auburn Street in Cambridge near its intersection with Belmont Street, shortly after eight o'clock on the evening of May 17, 1903. Writ dated November 18, 1903.

At the first trial of the case before *Aiken,* C. J., the jury returned a verdict for the plaintiff in the sum of $3,750, and exceptions alleged by the defendant were sustained by this court in a decision reported in 188 Mass. 367. See note 192 Mass. 162.

At a new trial of the case before *Schofield,* J. the defendant was defaulted and the jury assessed the damages upon default in the sum of $7,000. The defendant moved to take off the default, and also moved for a new trial. This motion was denied by *Schofield,* J. so far as it related to the removal of the default. Shortly afterwards on the defendant's motion *Bond,* J. set aside the verdict, and granted a new trial on the question of damages only. At this new trial, before *Aiken,* C. J., it appeared that the plaintiff was a retired sea captain and at the time of the accident was seventy-nine or eighty years of age, that, as he was returning from church and was going toward his home on Lowell Street in Cambridge, he walked down the south side of Belmont Street, which was the side on which the church stood, and as he was going across Mount Auburn Street he was struck by the defendant's auto- mobile, which knocked him down and rendered him uncon- scious. It was found that his right leg was broken or cracked a little above the ankle, that his back was injured or sprained, and that there was a contusion or wound upon the back of his head. Competent medical testimony was introduced by the plaintiff tending to show that as a result of the accident the

plaintiff had suffered permanent physical injuries and a serious mental derangement, including loss of memory, and that at the time of the trial he was suffering from dementia as a result of the blow and shock which he received at the time of the accident. It was contended by the plaintiff at the trial that the injury to his back was permanent.

The jury assessed the damages in the sum of $8,500, of which the plaintiff afterwards, in accordance with an order made by the Chief Justice under penalty of a new trial, remitted all in excess of $7,500. The defendant alleged an exception to the exclusion of certain evidence which is described in the opinion, and another exception to the admission of certain evidence which was not argued by the defendant.

*C. W. Bond,* (*H. H. Bond* with him,) for the defendant.

*J. L. Hall,* for the plaintiff.

HAMMOND, J. Under the plaintiff's contention that the injury to his back was permanent it was proper, if not necessary, for the jury in estimating the amount of compensation to take into consideration the probable duration of his life; and on that question there can be no doubt that standard mortality or life expectancy tables would have been admissible. *Rowley* v. *London & North Western Railway,* L. R. 8 Ex. 221. *Vicksburg & Meridian Railroad* v. *Putnam,* 118 U. S. 545. *Keast* v. *Santa Ysabel Gold Mining Co.* 136 Cal. 256. *Sauter* v. *New York Central & Hudson River Railroad,* 66 N. Y. 50.

In this case a medical witness for the defendant had before him a "book on life insurance," and turned to a "table showing the expectancy of life for each year, from 15 to 85, according to the actuaries' combined experience." When asked how such tables were "gotten up," he replied: "They are gotten up by the actuaries of these companies, put into tables; indicates at each age the expectancy of life at that particular age." Upon further inquiry, however, it appeared that the witness had no other information as to the authenticity of the table than that contained in the book, or, in other words, that he was stating simply what upon its face this table appeared to be. The table was excluded. Under these circumstances it does not appear that the exclusion of the book was error. It does not appear that the table was in any respect a standard table

or that it was well established or recognized authority, or even that it was in general use by life insurance companies. The judge well might have concluded upon the evidence before him that the table was not sufficiently authenticated, and we cannot say that such a conclusion was not warranted. In such a case he could rightly exclude it.

The exception to the admission of the evidence of the witness Lavers that on a certain occasion the plaintiff was asked if he did not know the witness was not argued by the defendant, and, in view of its nature, we consider it waived.

*Exceptions overruled.*